**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**GEORGE CARTER,**

    **Petitioner,**

**v.**                                                                   **Civil Action No. 3:08CV147**
                                                                        **Criminal Action No. 3:05CR68-5**
**UNITED STATES OF AMERICA,**                     **(JUDGE BAILEY)**

    **Respondent.**

**REPORT AND RECOMMENDATION
THAT §2255 MOTION BE DENIED**

**I.  Introduction**

On September 29, 2008, *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.[1] The Government filed its response on October 30, 2008.[2] Petitioner filed a Reply to the Government on November 17, 2008.[3]

**II.  Facts**

**A.  Conviction and Sentence**

On May 9, 2006, petitioner signed a plea agreement in which he plead guilty to count 6, conspiracy to trade cocaine base to violate § 924(c), and was sentenced to fifty-seven (57) months imprisonment to be followed by three (3) years of supervised release. As a result of this guilty plea, count 10 of the indictment (Felon in Possession) against petitioner was dismissed.

---

[1] Dkt. No. 555.

[2] Dkt. No. 560.

[3] Dkt. No. 561.

1

On May 9, 2006, petitioner entered his guilty plea in a change of plea hearing in open court. Petitioner was 53 years old and had completed high school. (Dkt. No. 463, p. 5). The Court specifically asked if petitioner understood the waiver of appellate and post-conviction relief rights and petitioner said that he did. (Id. at 10). The Court asked petitioner's counsel if he believed that petitioner fully understood the waiver of his appellate and post-conviction relief rights, and petitioner's counsel stated "yes." (Id. at 10). The Court then reviewed all the rights petitioner was giving up by pleading guilty. (Id. at 17-19). During the plea hearing, the Government presented the testimony of Special Agent Doug Dean to establish a factual basis for the plea. (Id. at 21 - 30). The petitioner did not contest the factual basis of the plea.

After the Government presented the factual basis of the plea, petitioner advised the Court that he was guilty of Count 6 of the indictment. (Id. at 12). In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id. at 11). The petitioner did not object to the Court's finding. The May 9, 2006 change of plea hearing was held with petitioner's new counsel, and limited the total relevant conduct to only the AK-47 rifle at issue in Count 6.

Subsequent to that, on July 12, 2006, apparently after receiving a copy of his presentence investigation report and despite being represented by counsel, petitioner filed a pro se Motion to Withdraw Plea of Guilty, asking that his plea agreement be rejected but that he be permitted to maintain his plea of guilt. On July 20, 2006, the Court held a hearing to address petitioner's pro se motion, eventually determining that petitioner did not, in fact, wish to retract his plea agreement while maintaining his guilty plea, as it would expose him to a possible life sentence if Count 10 were not dismissed as provided in the plea agreement. Extensive argument was heard on the possibility

of a four-level enhancement to petitioner's base offense status based on the AK-47 rifle at issue and discussion was had on whether petitioner would be permitted to proceed pro se from then forward. Petitioner agreed to wait until the sentencing hearing to voice the additional objections he had to the report, outside of the objections his counsel planned to raise.

On July 24, 2006, a sentencing hearing was held and petitioner voiced his pro se objections concerning the presentencing report and the determination of his base offense level status. The Court ruled against petitioner's objections. (Dkt. No. 464, p. 6). The application of 2K2.1(b)(5) to petitioner's base offense level status objection was again addressed. (Dkt. No. 464, p. 7). Extensive vigorous argument by counsel was interrupted to be taken up again in a continued sentencing hearing on July 26, 2006, along with the issue of whether petitioner could pay the as-yet unpaid $100 special assessment fee.

The Court reconvened in a continued sentencing hearing on July 26, 2006, finally sustaining petitioner's counsel's objection on the application of 2K2.1(b)(5) that could have raised petitioner's base offense status level by four points. (Dkt. No.465, p. 8). The Government then argued that it would not recommend reducing petitioner's status level by the proposed three points because petitioner still had not paid the then-delinquent $100 special assessment fee and thus was in violation of the plea agreement. Additionally, since petitioner's statement to the Court that day substantially changed his prior version of his relevant conduct regarding the gun transaction, the Government further argued that petitioner had not accepted responsibility for his actions and thus was not entitled to have points taken off for such acceptance. (Dkt. No. 465, p. 13 - 14). Petitioner was then sentenced to 57 months imprisonment, three months less than the statutory maximum 60 month term. (Id. at 18).

## B. Direct Appeal

On July 31, 2007, petitioner's counsel submitted a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967) to the United States Court of Appeals for the Fourth Circuit, appealing the adequacy of the Fed. R. Crim. P. 11 hearing conducted by the District Court, the Court's refusal to grant petitioner a downward adjustment in his offense level, and the reasonableness of his sentence.

Petitioner also submitted his own pro se supplemental brief appealing claims of ineffective assistance of counsel, government misconduct, and the sufficiency of his Rule 11 hearing. The Court of Appeals affirmed the District Court's decision on all issues except for the ineffective assistance of counsel claim, noting that such claims are best suited for a § 2255 motion.

On January 15, 2008, petitioner filed a petition for writ of certiorari with the U.S. Supreme Court, and on May 12, 2008, the petition for writ of certiorari was denied.

## C. Federal Habeas Corpus

Petitioner asserts two grounds in his § 2255 Motion to Vacate and three in his Memorandum in Support of that motion.

In Ground One of his § 2255 Motion to Vacate, petitioner asserts that his counsel was ineffective (IAC) and in Ground Two, that his sentence was improper because it was founded on an improper base offense guideline calculation. Finally, in his Memorandum of Law in Support of his § 2255 Motion to Vacate he asserts a Ground Three, contending that he is "innocent" of the habitual offender status.[4]

---

[4] Petitioner has not been found to be a habitual offender or career criminal. The only mention of career criminal status in these proceedings is in the July 14, 2006 Response of the United States to Defendant's Pro Se Motion to Withdraw from Plea Agreement (Dkt. No. 423) where the AUSA noted that petitioner was facing sentencing as an Armed Career Criminal on Count 10 of the indictment if his pro se motion was granted, and in the July 20, 2006 hearing to address that pro se motion, where the U.S. Attorney advised the Court that, based on petitioner's criminal history, if petitioner withdrew his plea agreement but maintained his guilty plea as he was then

The Government contends that petitioner's sentence is reasonable and that petitioner had already raised Grounds One and Two on direct appeal. Because Ground Two was decided on direct appeal, the Government argued that it cannot now be brought under a § 2255 motion. The Government further argued that since petitioner's IAC complaint was based on his counsel's failure to object to the improper calculation of his sentence, that it should fail as well. Finally, the Government noted that petitioner had not been found to be a habitual offender (Ground Three) and that he apparently misconstrued the calculation of his criminal history category points based on his prior convictions with the concept of habitual offender status.

Petitioner filed a Reply to the Government's Response, reiterating his claims regarding his sentence being based upon an improper base offense calculation, issues already addressed in detail by the District Court in his objections at sentencing and by the 4th Circuit on appeal.

**D.**    **Recommendation**

Based upon a review of the record, the undersigned recommends that the petitioner's §2255 motion be denied and dismissed from the docket, as one of petitioner's grounds has already been decided on appeal and the other two have no merit.

### III. Analysis

**A.**    **Petitioner's Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the

---

contemplating, and was accordingly charged under both counts of the indictment, he would then be a career offender facing life in prison. (Dkt. No. 470, p. 19 and pp. 27-28). Petitioner ultimately did not withdraw his plea agreement, and it is unclear why he believes he has achieved career criminal/habitual offender status.

maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D. Va. Jan. 4, 2006.

**B.      Procedurally Barred Claims**

Before evaluating the merits of petitioner's claims, the Court must determine which of petitioner's issues he may bring in his § 2255 motion and which are procedurally barred. It is well settled non-constitutional issues that could have been raised on direct appeal but were not may <u>not</u> be raised in a collateral attack such as a § 2255 motion. (emphasis added) Sunal v. Large, 332 U.S. 174, 178-79 (1947); Bousley v. United States, 523 U.S. 614 (1998). Constitutional errors that were capable of being raised on direct appeal but were not <u>may</u> be raised in a § 2255 motion so long as the petitioner demonstrates 1) "cause" that excuses his procedural default, and 2) "actual prejudice" resulting from the alleged error. (emphasis added) United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994). In establishing "prejudice," the petitioner must show the error worked to his "actual and substantial disadvantage," rather than merely created a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). In the alternative to establishing "cause" and "prejudice," the petitioner may demonstrate "actual innocence," or that "it is more likely than not, in light of all the evidence, that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 621 (1998). In such an event, the court should issue a writ of habeas corpus to prevent a "miscarriage of justice," regardless of whether the issue was procedurally defaulted. Hurdle v. United States, 2007 U.S. Dist. LEXIS 37709, at *6-7 (E.D. Va. May 22, 2007) (relying on Schlup v. Delo, 513 U.S. 298 (1995). Finally,

6

issues previously rejected on direct appeal may not be raised in a collateral attack. Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976).

**C. Ground One - Whether Counsel Rendered Ineffective Assistance in Failing to Object to the Petitioner's Base Offense Level Used to Calculate the Guideline for His Sentencing**

Even though petitioner signed a plea agreement waiving his right to bring a § 2255 action, it has been held that claims of ineffective assistance of counsel occurring after the plea agreement has been signed are still permitted to be bought before the Court. As to any ineffective assistance of counsel claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. United States v. Attar, 38 F.3d 727, 732-33 (4th Cir. 1994). Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Claims of ineffective assistance of counsel are measured under a two-part analysis outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. Id. at 688. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential." And the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 689-90.

Second, the petitioner must demonstrate he was prejudiced by counsel's performance. In

7

order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the defendant shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. Fields v. Att'y. Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir.), *cert. denied*, 506 U.S. 885 (1992).

Petitioner's IAC claim is based upon his contention that his attorney failed to object to a miscalculated base offense level which gave him a longer sentence than he otherwise would have received.

"The failure of counsel to object to an improper application of the sentencing guidelines may amount to ineffective assistance of counsel." United States v. Breckenridge, 93 F.3d 132, 136 (4th Cir. 1996).

At his July 24, 2006 sentencing hearing, petitioner's counsel allowed petitioner to address the Court pro se and voice his objection to the calculation of the base offense level giving rise to his sentence, but the Court did not rule in his favor. Therefore, petitioner's pro se objection was heard and decided by the Court, albeit in an adverse manner to petitioner. Petitioner's counsel's performance, in permitting petitioner to voice his objections to the Court, was well within the standard of reasonableness. Furthermore, petitioner's counsel himself then presented vigorous argument to the Court over the course of the July 20, 2006 hearing on his pro se Motion to Withdraw his plea agreement as well as the two days of continued sentencing hearings,[5] on complex legal

---

[5] July 24 and 26, 2006.

8

issues directly affecting several objections, ultimately prevailing on two of those,[6] most significantly, the application of U.S.S.G 2K2.1(b)(5) to petitioner's base offense level status, sparing the petitioner a four-point enhancement, an issue so complex that the Court noted it was one of first impression, and "as confusing as one I have seen in the application of the Sentencing Guidelines to the fact[s]." (Dkt. No. 465, p 8), such that "- - you kind of feel like you're back in law school. I've read it once, I've read it twice, and I am still not sure." (Dkt. No. 470, p. 26).

Finally, petitioner's counsel demonstrated zealous advocacy in persuading petitioner to withdraw his pro se Motion to Withdraw Plea of Guilty, as it would have exposed him to being sentenced as an armed career criminal with a potential term of life imprisonment rather than the 60 month maximum he was facing under the plea agreement. Even the AUSA commented to the Court that petitioner's potential life sentence had been bargained away "as a result of his attorney's advocacy," (Dkt. No. 470, p. 28) and that petitioner "has already made one terrible mistake that his lawyer bailed him out of" (Dkt. No.470, p. 20). Petitioner cannot establish actual prejudice from the decision because the 57-month sentence he received is well within the statutory maximum of 60 months imprisonment. Furthermore, on appeal, the 4th Circuit also found that, despite petitioner's claim that he had only a 'minor role" in the offense, petitioner's base offense level calculation was accurate and his sentence was presumptively reasonable, especially given petitioner's "very serious" involvement in the offense at issue.

Accordingly, petitioner can show neither that his counsel's performance failed to meet the standard of reasonableness or that he was prejudiced by any error his counsel made, and thus

---

[6] The other, petitioner's claim that he only played a minor role in the offense, was overruled, the Court noting that, to the contrary, petitioner was a key participant in the conspiracy, providing the nexus between the other two defendants.

petitioner has failed meet both the first and second prong of the Strickland analysis. Therefore petitioner has no valid claim for ineffective assistance of counsel. His claim is not supported by the facts, has no substance and must be dismissed.

**D.     Ground Two - The Alleged Miscalculation of Petitioner's Base Offense Level**

This issue, albeit framed somewhat differently,[7] has already been presented on appeal. The 4th Circuit examined the prisoner's sentence, including the base offense level he was assigned and rejected this claim. Therefore, petitioner may not now recast it under the guise of a collateral attack. *See* Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976).

**E.     Ground Three - Petitioner's Claimed Innocence of Habitual Offender Status**

This Ground has no merit and should be dismissed. Had petitioner actually been charged with Count 10 of the indictment, he could have been sentenced under 924(e) as an armed career criminal based on his prior history of convictions. However, since he pled guilty to only Count 6, he avoided that outcome. See p. 4, n.4 to this Report and Recommendation.

## IV.  Recommendation

Based upon a review of the record, the undersigned recommends that the petitioner's §2255 motion be denied and dismissed from the docket because although petitioner's waiver of collateral rights did not bar his IAC claims, petitioner's IAC claim, as well as his claim that his base offense level was miscalculated, are without merit. His third claim, that he is 'innocent' of habitual offender status is meritless – he was never found to be such.

Within ten (10) days after being served with a copy of this report and recommendation, any

---

[7] On appeal, this issue was framed as a refusal by the District Court to grant a downward adjustment in his offense level and an attack on the reasonableness of his sentence. Here frames it as an attack on his base offense level. Nevertheless, petitioner's base offense level is merely one aspect of the calculation of the sentencing guidelines used to arrive at his proper sentence.

10

party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address on the docket sheet, and to counsel of record, as applicable.

DATED: 7-13-09

*David J. Joel*
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE